**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BRANAUN GALENTINE,** *PLAINTIFF,* | § | **CIVIL ACTION NO. 4:25-cv-00050** |
| | § | |
| **V.** | § | |
| | § | |
| **CITY OF COLLEGE STATION, et al.,** *DEFENDANTS,* | § | |
| | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiff Branaun Galentine ("Plaintiff") hereinafter referred to as Plaintiff files this First Amended Complete against Defendants, Brazos County, Wayne Dicky City of College Station, City of Bryan, Chief Billy Couch, Officer Stadler, and Officer John Alger ("Defendants") hereinafter referred to as Defendants, and in support thereof show as follows:

**II. PARTIES**

1. Plaintiff, Branaun Galentine, is a resident of Harris County, Texas.

2. Defendant City of College Station

3. Defendant City of Bryan

4. Defendant Brazos County

5. Defendant Wayne Dicky

6. Defendant, Chief Billy Couch

7. Defendant, Officer Stadler

8. Defendant, Officer John Alger

## I. FACTS

Branaun Galentine was a promising young man despite being from an impoverished community of Fifth Ward, Texas. Although his neighborhood was challenging he worked hard and rose to the very top of his class graduating as the number one student, valedictorian Class of 2016. He was a star athlete as well. He earned scholarships for academics and athletics. He was celebrated and his achievements garnered media attention in his hometown of Houston, Texas. Although he had scholarship offers from universities across the country, he chose to stay local and attend Texas A&M University, which is located in College Station, Texas, in Brazos County. He had aspirations of becoming a meteorologist and believed that Texas A&M University was one of the world's finest universities when he graduated high school. His very first week of school two TAMU students met him with anger and disgust they passed by Plaintiff in their vehicle while Plaintiff was standing outside and yelled out the car window "Nigger," "Black Motherfucker," "Go back to the Slumps," "You don't belong here." He was left in a state of disbelief and confusion, unable to comprehend what could have caused such behavior. Despite the shock, he chose not to report the incident and continued with his day. That afternoon, TAMU officers arrived at his residence to investigate an accusation that he had brandished a firearm at two students on the highway. The officers believed those students over Mr. Galentine.

During his time in Brazos County, Plaintiff experienced several instances of excessive force by officers. For example, multiple officers once pinned him against a table stand in the booking area. As they removed his handcuffs, one officer bent his wrist back, causing a popping noise. In the following days, he experienced severe pain and was diagnosed with a fractured/broken wrist.

He was arrested over 20 times, yet he only had one traffic conviction and no other convictions. However, several public booking photos from these arrests remain accessible on the internet. Mr. Galentine attempted to put a stop to the treatment he received so he could live in Brazos County in peace. He contacted and made attempts to lodge complaints to Chief Couch about the numerous arrests without probable cause but his complaints were ignored. Chief Couch failed to discipline his officers or re-train his officers on the constitutional limits of arrests and detainments causing arrests and detainments without probable cause or reasonable suspicion first. As a result of his failures Plaintiff has been wrongfully stopped, accused of breaking the law all without probable cause. There was no probable cause for any arrest associated with any of the charges he was arrested for, in Cause Number 21020598 drive in center lane - not passing, not turning, cause no. 20014748 speed 25 mph or more over posted limit 60/30, cause no. 21020598, cause no. 22002148 disorderly conduct threat or abuse, cause no. 22002149 assault contact. Body camera footage has captured most of these events, including the misdemeanor assault contact charge when he allegedly struck CSPD officer Staler. The officer falsified government documents in the

form of the facts included in his police report stating that Mr. Galentine had assaulted him when in reality it was the officer who ran up to Mr. Galentine and grabbed him as Mr. Galentine tried to leave. that resulted in Mr. Galentine's arrest for assault contact blatantly contradicted by the body worn camera. As a result of the numerous false arrest booking photos have been generated and publicly disseminated. The cases were each dismissed on June 3, 2023. The numerous false arrests and mugshots have affected his ability to obtain employment. On one occasion a store manager, of a prospective employer, Dan Franti admitted after performing an internet search using Google, social media sites, the correctional offender network, and other free online public searches to obtain any information that the Google search revealed multiple mentions of criminal charges arising out of Texas as well as mugshots matching the likeness of Mr. Galentine. Mr. Franti "called Mr. Galentine and informed him that due to the information obtained from the Google search, the interview previously scheduled for November 6th was canceled." Mr. Galentine continues to suffer from the actions of the Brazos county area officers although he has graduated from Texas A&M with honors, and is no longer in the county. The defendants each conspired to violation Mr. Galantines' constitutional rights.

Galentine was arrested on multiple occasions without probable cause. None of Galentine's arrests resulted in convictions. Neither Brazos County and the City of College Station published and continues to publicly publish Mr. Galantine's mugshots online after his arrests. Neither Brazos County nor the City of College StationNeither Brazos County nor

the City of College Station did anything to prevent mugshots being published online after his arrests. Neither Brazos County nor the City of College Station took any action to remove the mugshots published online after his arrests. The result of Galentine's arrest would harm his job prospects. A potential employer rescinded a job offer due to Galentine's alleged criminal activities. Galentine made complaints to the police chief Couch regarding his treatment. His complaints about wrongful arrest and treatment were escalated to the mayor's office. The officers with Brazos County and the City of College Station police department involved had a history of misconduct involving racial profiling. The officers with Brazos County and the City of College Station police department had a history of misconduct involving excessive force. The officers with Brazos County and the City of College Station police department involved had a history of misconduct involving unlawful arrest. Instead of being disciplined, some of the officers involved in Galentine's case were later promoted. The public records related to Galentine's arrests were inaccurately maintained. Neither Brazos County nor the City of College Station police department had protocols in place for dealing with false reports by officers. Specifically, dealing with officer initiated arrest. Law enforcement officials knew they did not have probable cause to arrest Galentine. The Sheriff nor police chief never addressed the issue of racial discrimination within the department. The College Station police chief never addressed the issue of racial profiling within the department. The police chief has been delegated the duty as policymaker in the sphere of law enforcement by the City. There were no subsequent policy changes in

the police department due to Galentine's case. The City of College Station and Brazos County worked together to violate Mr. Galentine's rights and encouraged other agencies to do the same through the nation by issuing an unlawful "be on the look-out-BOLO" bulletin for Mr. Galatine, although he had not committed nor suspected of committing any crimes. Both Brazos County, its Sheriff and The City of College station and its chief of police continue to communicate and maintain the BOLO with other agencies regarding Branuan Galentine since 2021 until present .

Officers recorded their interactions with Galentine during arrests. The officers with Brazos County and the City of College Station police department are not trained to de-escalate the situation during Galentine's arrests. Racial bias was a significant factor in Galentine's wrongful arrests. The arrest records did not accurately reflect the details of the incidents and fabricate probable cause. Sheriff Wayne Dicky, and College Station Chief Couch ignored evidence of racial profiling within his department. Galentine was subjected to excessive force during his encounters with Brazos County and the City of College Station officers. Brazos County and the City of College Station officers' actions contributed to Galentine's psychological suffering.

None of the officers involved received discipline for their misconduct by Sheriff Wayne Dicky, and College Station Chief Couch. The officers in Mr. Galentine's arrest involved frequently targeted African American individuals. There is a pattern of constitutional violations within both Sheriff Wayne Dicky, and College Station Chief Couch

agencies. Their officers used their authority to intimidate Galentine. Each failed to train on racial profiling for the officers.

Statements made by the officers during the incidents were not consistent with the facts.

Officers did not adequately document their interactions with Galentine.

There are no safeguards to ensure officers adequately document their interactions.

There are no written safeguards policies to ensure officers honestly document their public interactions.

Neither Sheriff Wayne Dicky, nor College Station Chief Couch can explain why multiple arrests were made without probable cause or convictions other than a traffic ticket.

Neither Sheriff Wayne Dicky, nor College Station Chief Couch reviewed the body cam footage related to Galentine's interactions with law enforcement

Neither Sheriff Wayne Dicky, nor College Station Chief Couch has no written policy on addressing or handling complaints of identified excessive force

Neither Sheriff Wayne Dicky, nor College Station Chief Couch conduct audits or reviews of arrests and interactions involving minority individuals

There were unidentified bystander officers who witnessed the misconduct during the arrests of Galentine.

Neither Sheriff Wayne Dicky, nor College Station Chief Couch have any written policies regarding the dissemination of mugshots.

Neither Sheriff Wayne Dicky, nor College Station Chief Couch provide support for individuals who are wrongly accused or arrested. There are no protocols to encourage informing individuals about their rights during police encounters other than Miranda rights.

There are no written guidelines provided to officers concerning the use of force during arrests.

Officers training documented through TCOLE is not confirmed.

You do not know the details of classes provided through TCOLE other than the course title.

Officers have not received any disciplinary actions in relation to the incidents involving Galentine.

No officer has ever received any disciplinary for arrest without probable cause.

You have no written documentation showing any officer has ever received any disciplinary for arrest without probable cause.

Sheriff Wayne Dicky, and College Station Chief Couch officers intended on causing mental harm to Galentine. Sheriff Wayne Dicky, and College Station Chief Couch failed to train on handling mental health crises during arrests. There is no process for internally reporting and investigating officer misconduct There are no accommodations or awards presented associated with reporting another officer's misconduct. There is no encouragement provided by the department to report another officer's misconduct.

Sheriff Wayne Dicky, and College Station Chief Couch do nothing to ensure accurate documentation of interactions with individuals in the community . There is no feedback mechanisms set forth by the department in place for citizens to express their concerns about police actions.

## III. JURISDICTION AND VENUE

This court has jurisdiction over this case and the damages sought are within the jurisdictional limits of this court. Venue is proper in Brazos County, Texas, because all or a substantial part of the events giving rise to the cause of action occurred here.

## IV. CLAIMS

Plaintiff incorporates the preceding paragraphs herein to support the claims of Federal Malicious Prosecution, False Imprisonment, Fourth Amendment Unlawful Seizure, Retaliation, Equal Protection and Conspiracy to Obstruct Justice against each defendant.

## V. DAMAGES

Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

Plaintiff seeks all damages allowed by law as a result of the aforementioned forming the basis for each of Plaintiff's causes of action. Plaintiff requests damages within the jurisdictional limits of the Court.

The damages sustained by Plaintiff were proximately caused by Defendants as set forth herein.

Plaintiff is further entitled to reasonable attorneys' fees and costs in pursuing this matter, and any other reasonable and necessary damages as allowed 42 U.S.C section 1988.

As a direct and proximate result of the malicious and outrageous conduct of Defendants as previously described, Plaintiff suffered and continues to suffer emotional distress, mental anguish, pain and consternation associated with being unlawfully retaliated against. Accordingly, Plaintiff requests Defendants to pay, jointly and severally, all damages recoverable under the law to the Plaintiff, including the following: Compensatory damages, emotional distress, mental anguish, and deprivation of legal rights, punitive damages, pre-judgment interest, post-judgment interest, costs of suit and fees as allowable by law, attorneys' fees under 42 U.S.C. sections 1983 and 1988 and Texas Civil Practice and Remedies Code section 101.0215 and expert fees under 42 U.S.C. sections 1981 and 1981a. Any other such relief is deemed just and proper.

## VI. INJUNCTIVE RELIEF

Remove all indications of criminal arrest that have failed to result in convictions and booking photos where they may be found.

## X. PRAYER

9. Plaintiff respectfully prays that Defendants be cited to appear and answer this petition. Plaintiff also respectfully prays for judgment against Defendants, jointly and severally, for:

a. Compensatory damages in an amount which is fair and reasonable;
b. Attorneys' fees pursuant to federal and state law;
c. Exemplary damages for the Defendants' malicious and outrageous conduct;

d. Pre- and post-judgment interest at the maximum rate allowed by law;

e. Loss of enjoyment of life damages;

f. Emotional distress;

g. Physical pain & suffering;

h. Mental anguish damages;

i. Deprivation of legal rights;

j. Expert fees;

k. Costs and expenses of Court; and

l. General relief, such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully Submitted,
/s/ U.A. Lewis
U.A. Lewis
Lewis Law Group, PLLC
State Bar No. 24076511
P.O. Box 27353
Houston, TX 77227
Tel: (713) 570-6555
Fax: (713) 581-1017
myattorneyatlaw@gmail.com
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing instrument has been sent to all interested counsel of record and defendants via permissible means, and/or E SERVICE on this 21st day of February, 2025.

***/s/U.A. Lewis***
***U. A. Lewis***