**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BRANAUN GALENTINE,** | § | |
| ***PLAINTIFF,*** | § | **CIVIL ACTION NO.** |
| | § | **4:25-cv-00050** |
| **V.** | § | |
| | § | |
| **CITY OF COLLEGE STATION, et** | § | |
| **al.,** | § | |
| ***DEFENDANTS,*** | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiff Branaun Galentine ("Plaintiff") hereinafter referred to as Plaintiff files this Second Amended Complete against Defendants, Brazos County, Wayne Dicky City of College Station, City of Bryan, Chief Billy Couch, Officer Stadler, and Officer John Alger ("Defendants") hereinafter referred to as Defendants, and in support thereof show as follows:

**II. PARTIES**

1. Plaintiff, Branaun Galentine, is a resident of Harris County, Texas.

2. Defendant City of College Station

3. Defendant Brazos County

4. Defendant, Sheriff Wayne Dicky

5. Defendant, Chief Billy Couch

6. Defendant, Rodney E. Sigler

## I. FACTS

Branaun Galentine was a promising young man despite being from an impoverished community of Fifth Ward, Texas. Although his neighborhood was challenging he worked hard and rose to the very top of his class graduating as the number one student, valedictorian Class of 2016. He was a star athlete as well. He earned scholarships for academics and athletics. He was celebrated and his achievements garnered media attention in his hometown of Houston, Texas. Although he had scholarship offers from universities across the country, he chose to stay local and attend Texas A&M University, which is located in College Station, Texas, in Brazos County. He had aspirations of becoming a meteorologist and believed that Texas A&M University was one of the world's finest universities when he graduated high school. In the fall of 2016, in his very first week of school two TAMU students met him with anger and disgust they passed by Plaintiff in their vehicle while Plaintiff was standing outside and yelled out the car window "Nigger," "Black Motherfucker," "Go back to the Slumps," "You don't belong here." He was left in a state of disbelief and confusion, unable to comprehend what could have caused such behavior. Despite the shock, he chose not to report the incident and continued with his day. That afternoon, TAMU officers arrived at his residence to investigate an accusation that he had brandished a firearm at two students on the highway. The officers believed those students over Mr. Galentine.

During his time in Brazos County, Plaintiff experienced several instances of excessive force by officers, from 2016 until 2023. For example, multiple officers once pinned him against a table stand in the booking area. As they removed his handcuffs, one officer bent his wrist back, causing a popping noise. In the following days, he experienced severe pain and was diagnosed with a fractured/broken wrist. This occurred in 2019.

Despite his extensive involvement with law enforcement in Brazos County between 2016 and 2023, which resulted in over 20 arrests, his official criminal record remained remarkably sparse. Despite having an otherwise clean criminal record, marred only by a single documented traffic violation, the individual's multiple arrests have left a lasting digital footprint.

Mr. Galentine made numerous attempts to cease the harassment and continue residing peacefully in Brazos County. He took proactive measures by contacting Chief Couch directly to express his grievances regarding the multiple arrests he had endured without probable cause. Unfortunately, his complaints were met with indifference and disregard. Chief Couch's failure to take appropriate action, such as disciplining or re-training his officers on the constitutional limits of arrests and detentions without probable cause, directly resulted in a continuation of the unlawful arrests and detentions that lacked probable cause or reasonable suspicion.

Due to Couch's failure to adequately discipline or re-train his officers on the constitutional limitations surrounding arrests and detentions, the Plaintiff has been subjected

to multiple wrongful stops and accusations of breaking the law, all without the presence of probable cause.

The arrest associated with the charges in Cause Number 21020598 (drive in center lane - not passing, not turning), Cause Number 20014748 (speed 25 mph or more over posted limit 60/30), Cause Number 21020598, Cause Number 22002148 (disorderly conduct threat or abuse), and Cause Number 22002149 (assault contact) lacked probable cause. Body camera footage documented most of these events, including the alleged misdemeanor assault contact charge against CSPD Officer Rodney E. Sigler. The officer's police report falsely claimed that Mr. Galentine assaulted him; however, the footage shows the officer running towards Mr. Galentine and grabbing him as he attempted to leave.

The footage captured by the body worn camera directly and irrefutably contradicted the assault charge that led to Mr. Galentine's arrest. This wrongful arrest resulted in the generation and public dissemination of numerous false arrest booking photos, causing further harm to Mr. Galentine's reputation and standing in the community. Each of the cases stemming from this unjust arrest was ultimately dismissed on June 3, 2023.

Mr. Galentine's employment prospects have been severely damaged due to the numerous false arrests and the subsequent proliferation of his mugshots across the internet. These digital remnants of the unjust charges against him have created a lasting and damaging stain on his reputation, making it exceedingly difficult for him to secure gainful employment. A potential employer rescinded a job offer due to Galentine’s alleged criminal activities. For

instance, during one job application process, a prospective employer's store manager, Dan Franti, conducted a thorough online search to learn more about Mr. Galentine. Mr. Franti utilized a variety of freely available online search tools, including Google, social media platforms, and the correctional offender network. He also searched other public records databases and background check websites.

Mr. Franti admitted that the results of his Google search revealed numerous mentions of criminal charges originating in Texas, along with multiple mugshots that clearly matched Mr. Galentine's name and likeness. These search results, which were free, easily accessible and prominently displayed, cast an immediate and indelible shadow of suspicion over Mr. Galentine's character and suitability for employment despite his degree with honors from Texas A&M.

Mr. Franti "called Mr. Galentine and informed him that due to the information obtained from the Google search, the interview previously scheduled for November 6th was canceled." Mr. Galentine continues to suffer from the actions of the Brazos county area officers although he has graduated from Texas A&M with honors, and is no longer in the county. The defendants each conspired to violate Mr. Galantines' constitutional rights.

Galentine was detained and arrested on multiple occasions without probable cause by Brazos county and college station police officers. Not all detainments resulted in arrest and only one of Galentine's arrests resulted in a traffic conviction. Brazos County nor the City of College Station published and continues to publicly publish Mr. Galantine's mugshots

online after his arrests. Neither Brazos County nor the City of College Station did anything to prevent mugshots being published online after his arrests. Neither Brazos County nor the City of College Station took any action to remove the mugshots published online after his arrests. The result of Galentine's arrest would harm his job prospects. Galentine made complaints to the police chief Couch regarding his treatment. His complaints about wrongful arrest and treatment were escalated to the mayor's office. The officers with Brazos County and the City of College Station police department involved had a history of misconduct involving racial profiling. The officers with Brazos County and the City of College Station police department had a history of misconduct involving excessive force. The officers with Brazos County and the City of College Station police department involved had a history of misconduct involving unlawful arrest of not only Mr. Galentine but many others. Instead of being disciplined, some of the officers involved in Galentine's case were later promoted. The public records related to Galentine's arrests were inaccurately maintained.

Law enforcement agencies in Brazos County and College Station lacked established procedures for disciplining or retraining their officers whose reports did not match the events to support arrest, particularly those leading to false arrests. This lack of policy resulted in the detainment and arrest of Galentine on multiple occasions with disregard for required probable cause. The policymakers within both the Sheriff's department, Sheriff Dickey, and the College Station police department, Chief Couch, failed to address the deeply ingrained

issue of officer initiated false arrest, racial discrimination, further enabling a culture of impunity. College Station police chief neglected to confront the pervasive practice of racial profiling within the department, allowing it to persist unchecked.

The College Station police chief has been delegated the duty as policymaker in the sphere of law enforcement by the City of College Station. There were no subsequent policy changes in the police department due Galentine's arrests and dismissed cases.

Law enforcement agencies across Brazos County collaborated to infringe upon Mr. Galentine's rights. This was further encouraged by the City of College Station and Brazos County, who, through the issuance of an unlawful "be on the lookout" (BOLO) bulletin, propagated this violation of rights nationwide. This BOLO was issued despite the fact that Mr. Galentine had not committed, nor was he suspected of committing, any crimes.

Furthermore, both Brazos County and its Sheriff, as well as the City of College Station and its Chief of Police, have continued to communicate and maintain the BOLO with other agencies regarding Branuan Galentine since 2021, and this practice persists to the present day. This ongoing communication and maintenance of the BOLO represents a continued and persistent violation of Mr. Galentine's rights.

Officers recorded their interactions with Galentine during arrests with body worn cameras. The officers with Brazos County and the City of College Station police department are not trained to de-escalate the situation during Galentine's arrests. Racial bias was a significant factor in Galentine's wrongful arrests. The arrest records did not accurately reflect

the details of the incidents and fabricate probable cause. Sheriff Wayne Dicky, and College Station Chief Couch ignored evidence of racial profiling within his department. Galentine was subjected to excessive force during his encounters with Brazos County and the City of College Station officers. Brazos County and the City of College Station officers' actions contributed to Galentine's psychological suffering.Law enforcement officers documented their interactions with Galentine during the course of his arrests using body-worn cameras. These recordings may provide evidence of the officers' conduct and Galentine's behavior during these encounters.

Officers from both the Brazos County and the City of College Station police departments lacked adequate training in de-escalation techniques. This deficiency in training contributed to the escalation of tensions and the retaliatory arrest. Galentine was targeted and treated differently due to his race, leading to unjustified arrests.

The arrest records were inaccurate and did not truthfully reflect the actual details of the incidents. These records were manipulated to fabricate probable cause, thereby providing a false justification for Galentine's arrests.

Sheriff Wayne Dicky and College Station Chief Couch had access and supervised their officers but disregarded the racial profiling within their respective departments showing

deliberate indifference for the rights of individuals who were subjected to unconstitutional practices.

As a result of the actions of Brazos County and City of College Station officers, Galentine allegedly suffered psychological harm. This could include emotional distress, anxiety, depression, or other mental health issues that resulted from his experiences with law enforcement.

None of the officers involved received discipline for their misconduct by Sheriff Wayne Dicky, and College Station Chief Couch. The officers in Mr. Galentine's arrest involved frequently targeted African American individuals. There is a pattern of constitutional violations within both Sheriff Wayne Dicky, and College Station Chief Couch agencies. Their officers used their authority to intimidate Galentine. Each failed to train on racial profiling for the officers.

Neither Sheriff Wayne Dicky nor College Station Chief Couch can explain why multiple arrests were made without probable cause or convictions (other than a traffic ticket). Neither has reviewed the body cam footage related to Galentine's interactions with law enforcement, and neither has written policies on addressing or handling complaints of identified excessive force. Additionally, neither conducts reviews of arrests and interactions involving minority individuals.

There were unidentified bystander officers who witnessed the misconduct during Galentine's arrests, yet neither Brazos County, Sheriff Wayne Dicky nor College Station

Chief Couch have any written policies regarding the dissemination of mugshots or providing support for individuals who are wrongly accused or arrested. There are no protocols to encourage informing individuals about their rights during police encounters other than Miranda rights.

There are no written policies provided to officers concerning the use of force during arrests, and officers' TCOLE training documentation is not confirmed. The details of TCOLE classes are unknown other than the course titles.

No officer has received any disciplinary actions in relation to the incidents involving Galentine, and no officer has ever received any disciplinary action for an arrest without probable cause. There is no written documentation showing that any officer has ever been disciplined for an arrest without probable cause or racial profiling.

Sheriff Wayne Dicky and College Station Chief Couch's officers intended to cause mental harm to Galentine. They failed to train on handling mental health crises during arrests. There is no process for internally reporting and investigating officer misconduct, and there are no accommodations or awards associated with reporting another officer's misconduct. The department does not encourage reporting another officer's misconduct.

Sheriff Wayne Dicky and College Station Chief Couch do nothing to ensure accurate documentation of interactions with individuals in the community. There are no feedback mechanisms in place for citizens to express their concerns about police actions.

## III. JURISDICTION AND VENUE

This court has jurisdiction over this case and the damages sought are within the jurisdictional limits of this court. Venue is proper in Brazos County, Texas, because all or a substantial part of the events giving rise to the cause of action occurred here.

## IV. CLAIMS

**First Amendment Retaliation**

During his encounters with Brazos County and City of College Station officers, Galentine was subjected to retaliatory arrest that was unnecessary and unreasonable under the circumstances. Officer Rodney E. Sigler arrested Mr. Galentine without probable cause because he exercised his right to remain silent and refused to talk to Sigler.

**Fourth Amendment Violation-Unlawful Seizure**

Fourth Amendment Unlawful Seizure, Federal Malicious Prosecution, False Imprisonment, Officer Sigler violated Mr. Galentine

**Fourteenth Amendment Violation of Due Process**

Equal Protection and Conspiracy to Obstruct Justice against each defendant. Branuan Galentine's rights were violated by law enforcement agencies in Brazos County, namely Brazos County Sheriff's office and College station police department, through Racial Profiling and an unlawful "be on the lookout" (BOLO) bulletin, issued despite him not committing or being suspected of any crimes. The City of College Station and Brazos

County have continued to maintain and communicate this BOLO with other agencies since 2021, perpetuating the violation of Galentine's rights. They conspired to harass Mr. Galentine and unlawfully detain him without reasonable suspicion but based on the BOLO alone and make sure other agencies did the same. He was routinely stopped by law enforcement agencies across the country. The stops only ceased after he sold his car . He has not purchased a new one or driven a car registered in his name since and the stops have ended.

**Failure to Train and Supervise**

City of College Station, and Brazos County through their policymakers Couch and Dickey demonstrate gross inconsistencies and inadequacies in policy, procedures and practices relating to interactions with and arrests of Branaun Galentine, and others, that lead to his latest series of arrests and dismissals, after Sadler fabricated his arrest report that resulted in a dismissal in June 2023. The inconsistent statements by officers, inadequate documentation of interactions, lack of safeguards and written policies regarding documentation and use of force, arrests without probable cause, are based on the policymakers Couch and Dickey's failure to supervise and review body cam footage, the absence of policies on excessive force complaints, and lack of review of interactions involving minorities. The failures in training lead to a mental health crisis, which their officers were never adequately trained to handle. There was a failure to train on bystanders to

intervene and report misconduct, and accurate documentation encountered, and a lack of support for wrongly accused individuals or feedback mechanisms for citizen concerns.

The stark contrast between Mr. Galentine's numerous arrests and his solitary conviction demonstrate and support the failure to train, supervise and discipline officers was the moving force behind Mr. Galentin's rights being violated. These failures include wrongful arrests, resulting in reluctant but necessary dismissal of charges. The existence of numerous publicly accessible booking photos from these incidents creates and perpetuates an unfair negative perception of Mr. Galentine, considering the final outcomes of the cases or the absence of subsequent convictions. The lasting impact of digital records and the potential for online information to overshadow and tarnish his otherwise unblemished reputation.

The repeated disregard for constitutional rights displayed in Mr. Galentine's case reveals a pattern of injustice and a systemic failure to uphold and protect his rights. This pattern suggests a pervasive neglect in ensuring that law enforcement officers fully comprehend and operate within the boundaries of their legal authority. This ongoing neglect has directly resulted in the repeated and unlawful infringement of Mr. Galentine's constitutional rights.

## V. DAMAGES

Plaintiff adopts and incorporates by reference each and every factual allegation in the preceding paragraphs as though fully set forth herein.

Plaintiff seeks all damages allowed by law as a result of the aforementioned forming the basis for each of Plaintiff's causes of action. Plaintiff requests damages within the jurisdictional limits of the Court.

The damages sustained by Plaintiff were proximately caused by Defendants as set forth herein.

Plaintiff is further entitled to reasonable attorneys' fees and costs in pursuing this matter, and any other reasonable and necessary damages as allowed 42 U.S.C section 1988.

As a direct and proximate result of the malicious and outrageous conduct of Defendants as previously described, Plaintiff suffered and continues to suffer emotional distress, mental anguish, pain and consternation associated with being unlawfully retaliated against. Accordingly, Plaintiff requests Defendants to pay, jointly and severally, all damages recoverable under the law to the Plaintiff, including the following: Compensatory damages, emotional distress, mental anguish, and deprivation of legal rights, punitive damages, pre-judgment interest, post-judgment interest, costs of suit and fees as allowable by law, attorneys' fees under 42 U.S.C. sections 1983 and 1988 and Texas Civil Practice and Remedies Code section 101.0215 and expert fees under 42 U.S.C. sections 1981 and 1981a. Any other such relief is deemed just and proper.

## VI. INJUNCTIVE RELIEF

Remove all indications of criminal arrest that have failed to result in convictions and booking photos where they may be found.

## X. PRAYER

Plaintiff respectfully prays that Defendants be cited to appear and answer this petition. Plaintiff also respectfully prays for judgment against Defendants, jointly and severally, for:

a. Compensatory damages in an amount which is fair and reasonable;
b. Attorneys' fees pursuant to federal and state law;
c. Exemplary damages for the Defendants' malicious and outrageous conduct;
d. Pre- and post-judgment interest at the maximum rate allowed by law;
e. Loss of enjoyment of life damages;
f. Emotional distress;
g. Physical pain & suffering;
h. Mental anguish damages;
i. Deprivation of legal rights;
j. Expert fees;
k. Costs and expenses of Court; and
l. General relief, such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully Submitted,
/s/ U.A. Lewis
U.A. Lewis
Lewis Law Group, PLLC
State Bar No. 24076511
P.O. Box 27353
Houston, TX 77227
Tel: (713) 570-6555
Fax: (713) 581-1017
myattorneyatlaw@gmail.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument has been sent to all interested counsel of record and defendants via permissible means, and/or E SERVICE on this 28th day of March 2025.

***/s/U.A. Lewis***
***U. A. Lewis***